**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

LARRY MURPHREE,

        Plaintiff,

vs.                                                  Case No. 3:13-cv-713-J-34MCR

THE TIDES CONDOMINIUM AT
SWEETWATER BY DEL WEBB MASTER
HOMEOWNERS' ASSOCIATION, INC., et al.,

        Defendants.

_____

## <u>ORDER</u>

      This case arises from a condominium association's restrictions regarding the flying of

the American flag by a condominium owner.  It is before the Court on two motions to dismiss:

Defendants', Tides Condominium at Sweetwater by Del Webb, Inc., Sweetwater by Del Webb

Master Homeowners' Association, Inc., Continental Group, Inc., and Katie Hollis, Motion to

Dismiss and Incorporated Memorandum of Law (Doc. 9; Tides Motion), and Defendant Pulte

Home Corporation Motion to Dismiss Complaint and Incorporate [sic] Memorandum of Law

(Doc. 10; Pulte Motion)(collectively "Motions").   Plaintiff Larry Murphree ("Plaintiff" or

"Murphree"), has responded in opposition to both Motions.  (Doc. 12; Response)[1].

_____

     [1]   Murphree titles his Response "Motion In Opposition To Defendant's Motion To Dismiss."
Although Murphree requests that the Court "allow[ ] the Plaintiff to modify the case style properly
renaming the parties," Response at 3, and to award attorneys' fees and costs, <u>id.</u> at 5, he seeks no other
affirmative relief.  Rather, Murphree addresses arguments made by Defendants in their Motions, and
concludes by requesting "that this Court deny the Defendants [sic] motion to dismiss." <u>Id.</u> at 5.  Thus
the Court construes this filing as being Murphree's response to the pending Motions.

## I. **Standard of Review**

In the Motions, Defendants seek dismissal of Murphree's Complaint for failure to state a claim pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rules(s)).  When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true, construing the allegations and drawing all reasonable inferences in the light most favorable to the plaintiff.  Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  Rule "8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007). Normally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  However, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citations and quotations omitted).  As a result, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Of course, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief.'" <u>Amer. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting <u>Iqbal</u>, 556 U.S. at 679)).

## II.    <u>Background</u>

### A.    <u>Facts Alleged</u>

Murphree's Complaint is premised on the Defendants' enforcement of condominium association restrictions regarding the display of an American flag.  (<u>See</u> Doc. 1; Complaint). Murphree, who owns a condominium at The Tides Condominium at Sweetwater by Del Webb, alleges that in 2011, he began "displaying a small United States flag in the garden pots outside the door to his condominium."  <u>Id.</u> at ¶¶ 9, 14.[2]  According to Murphree, his flag

---

[2]  Murphree identifies the Defendants as follows:

1.    "The Tides Condominium At Sweetwater By Del Webb Master Homeowners' Association, Inc." ("Tides"), a "Florida Corporation," that is "the condominium association formed for the purpose of managing the condominium property at which the Plaintiff resides, <u>id.</u> at 1 and ¶ 10;

2.    "The Pultegroup, Inc." ("Pulte"), a "foreign Corporation doing business in Florida," which "is the owner and operator of the Tides." <u>Id.</u> at 1 and ¶ 11.  "The Sweetwater by Del Webb community is owned and operated by Pulte." <u>Id.</u> at ¶ 37;

3.    "The Continental Group" ("Continental"), "a Florida Corporation," which "manages Tides," <u>id.</u> at 1 and ¶ 12; and

4.    "Katie Hollis" ("Hollis"), an individual who "is employed by Continental as the community association manager for Tides." <u>Id.</u> at 1, ¶ 13.  She is "an employee, acting as community association manager of Continental which manages the Tides. <u>Id.</u> at ¶ 36.

In their Motions, Defendants assert that Murphree has not named the proper parties.  They state that The Tides Condominium at Sweetwater by Del Webb Master Homeowners' Association, Inc., named by Murphree as a Defendant, "is not a valid name of any corporation in the State of Florida."  Tides Motion at 1.  Rather, the proper entity names are: Tides Condominium at Sweetwater by Del Webb, Inc., and Sweetwater by Del Webb Master Homeowners' Association, Inc.  <u>Id.</u>  Additionally, Tides explains that "[t]he Continental Group recently changed its corporate name to First Service Residential Florida, Inc." <u>Id.</u>  Further, Pulte asserts that "Plaintiff has sued the wrong Defendant, PulteGroup, Inc."  Pulte Motion

(continued...)

display has prompted years of harassment, fines and other torment at the hands of the

Defendants.  In his Complaint, Murphree describes the history of discord and conflict with

Defendants regarding his display of the American flag, including a previous lawsuit which he

filed and later voluntarily dismissed after reaching a settlement.  Complaint at ¶¶ 14-18, 23,

27-30.   As part of that settlement, Murphree agreed to display the American flag in

compliance with "Association Documents."  (Doc. 1-2; Complaint Ex. B).[3]

On April 24, 2012, less than two weeks after Murphree dismissed his flag lawsuit, the

Tides Board of Directors approved new Design Guidelines for Flags and Amended Design

Guidelines for Potted Plants ("Guidelines")."  Complaint at ¶ 30.  The Guidelines provide that

> Any Unit Owner may display one (1) portable, removable United
> States flag daily in a respectful way.
> . . .
>
> Flags may be displayed only in flag brackets . . . installed only on
> the outside front decorative white banding surrounding the
> entrance to a Tides unit garage door, and be adjacent to and
> even with the lighted unit-address plate.  The flag shall not be
> displayed on days when the weather is inclement, except when
> an all-weather flag is displayed, and flags may be flown only
> during daylight hours.  All flags must be maintained in good
> condition.

(Doc. 1-4 at 2; Complaint Ex. D).  As to potted plants, the Guidelines provide:

---

[2](...continued)
at 1.  Pulte's proper name is asserted to be Pulte Home Corporation.  Id.  Murphree responds to these
declarations asking only that he be permitted to "modify the case style properly renaming the parties."
Response at 3.

[3]  "In resolving a motion to dismiss under Rule 12(b)(6), the court generally limits itself to a
consideration of the pleadings and exhibits attached thereto."  Kinsey v. MLH Fin. Servs., Inc., 509 F.
App'x 852, 853 (11th Cir. 2013)(citing Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir.
2000)).  "Exhibits that are attached to a pleading are considered part of the pleading for all purposes."
Id. (citing Rule 10(c)).

> One (1) potted plant per unit may be placed in the covered entry.
> . . . Contents of planters are limited to maintained foliage, flowers
> and self-watering devices to help keep plant material in good
> condition, such as glass watering bulbs, ceramic watering
> sensors/probes or spikes.  No more than three (3) such self-
> watering devices may be used.

Id. at 3.

Murphree alleges that he has "continued to exercise his right to display the American Flag," Complaint at ¶ 31, and as a result, on February 8, 2013, he "received a written second notice of violation regarding small American flags he had placed in the potted plants located outside his front door and was given until February 15, 2013, to remove the flags or face fines of $100.00 per day." Id. at ¶ 32.  That notice, signed by Hollis as "Property Manager," informed Murphree that based upon a February 8, 2013 inspection, "[c]urrently your [sic] are not complying with the Potted Plant Design Guideline or The Flag Design Guideline." (Doc. 1-5 at 2; Complaint Ex. E "(Notice)").  The notice also stated that a hearing would be scheduled if Murphree did not comply with the Guidelines by February 15, 2013.  Id. Murphree alleges that on March 5, 2013, he received a "Notice of Violation - Hearing," which alleged his continuing violation of the flag and potted plant Guidelines as of March 5, 2013, and scheduled a hearing before the condominium Rules/Enforcement Committee on March 20, 2013.  Complaint at ¶ 33; (Doc. 1-6; Complaint Ex. F).  Murphree appeared at the hearing. Complaint at ¶ 34; (Doc. 1-7; Complaint Ex. G).

On April 19, 2013, Murphree received notification from the Tides Compliance Enforcement Committee ("Committee"), that the Committee determined that Murphree's "Flag in Pot in the Common Area" was not in compliance "with the Potted Plant Design Guideline or the Flag Design Guideline," and thus, was in violation of the Guidelines.  Complaint at ¶

35; Complaint Ex. G.   The Committee determined that Murphree "must comply with the potted plant design guideline by May 15, 2013," and that "[f]ailure to comply with these terms will result in a fine of $100 per day until the violation has been corrected."   Complaint Ex. G. Defendant Hollis signed the Committee's letter in her capacity as the Community Association Manager.   Complaint at ¶ 35; Complaint Ex. G.   Murphree alleges that on June 7, 2013, he "received a bill from the Tides for $1,000.00 for failure to remove the American Flag on his property."   Complaint at ¶ 42.

### B. **The Complaint**

On June 18, 2013, Murphree, who is represented by counsel, filed a seven count Complaint.   Murphree labels Count I as an "Action for Declaratory Relief and Damages Pursuant to 120 Stat. 572," the Freedom to Display the American Flag Act of 2005 (the "Act"). In this count, Murphree alleges that the Act "indicates that the Defendant my [sic] not curtail Plaintiff's right to display the United States flag outside of his condominium residence under the guise of enforcing the association covenants and restrictions under Federal law," and that "the Defendant" has continued to "harass" and "persecute Plaintiff's display of the United States flag contrary to Federal Law."   Complaint at ¶¶ 45, 46.   Additionally, Murphree alleges that his "fundamental right to free speech has been chilled and curtailed" by "Defendant's" actions.   Id. at ¶ 47.   Murphree does not identify the Defendant(s) against whom Count I is asserted, although he refers only to the "condominium association."   Id. at 8.   As relief, he seeks an "Order declaring the actions of the condominium association invalid pursuant to 120 Stat. § 572," plus damages, attorneys' fees and costs.   Id.

In Count II of the Complaint, Murphree seeks "declaratory relief" requesting an "Order declaring the actions of the condominium association invalid pursuant to Florida Statute § 718.113(4)," which he alleges "indicates that the Defendant(s) my [sic] not curtail Plaintiff's right to display the United States flag outside his condominium residence." Id. at 8-9.

In Count III of the Complaint, Murphree asserts a violation of Title 42 U.S.C. Section 1983. Murphree alleges that he seeks damages "for violation of Plaintiff's speaking rights pursuant to the United States Constitution Amendment 1." Complaint at ¶ 53. He contends that "Defendant(s) . . . is a state actor for purposes of first amendment analysis." Id. at ¶ 55 (citing Shelley v. Kraemer, 334 U.S. 1 (1948) and Gerber v. Longboat Harbour N. Condo., Inc., 757 F. Supp. 1339 (M.D. Fla. 1991)). He also asserts that his display of the American flag is "protected for political speech," and that "the Defendant condominium corporation has infringed upon Plaintiff's fundamental right to free speech protected by the First Amendment to the United States Constitution." Id at ¶¶ 56, 57. As relief, Murphree seeks an Order declaring the actions of the condominium association "invalid," and awarding "actual damages," attorneys' fees and costs. Id. at 10.

In Counts IV through VII of the Complaint, Murphree appears to assert state law claims. Count IV is labeled an "Action for Harassment." In it, Murphree alleges that Defendant Hollis, "in her capacity as community property manager," has repeatedly harassed Murphree regarding his display of the American flag, landscaping improvements and "solar lights." Complaint at ¶¶ 60-67. Count V is pled as an "Action for Quiet Use and Enjoyment," in which Murphree repeats allegations regarding Hollis's alleged harassment, and asserts that he is unable to reside in his home "without constant harassment from Hollis and Tides."

Id. ¶¶ 69-70.   In Count VI, Murphree alleges an "Action for Constructive Eviction/Foreclosure," again based on Hollis's alleged "harassment." Id. at ¶¶ 72, 73. He seeks an Order "declaring the actions of Hollis and Tides as causing the Plaintiff to be constructively evicted and foreclosed," and damages. Id. at 12. And in Count VII, Murphree alleges an "Action For Punitive Damages" pursuant to Fla. Stat. § 768.72(3)(a) against all Defendants.   Complaint 12-13.

III.   **Discussion**

"In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997). Murphree does not assert that the Court has diversity of citizenship jurisdiction. Instead, he contends that the Court possesses federal question jurisdiction because he presents causes of action "pursuant to 120 Stat. 572, the Freedom to Display the American Flag Act of 2005, and 14 [sic] U.S.C. § 1983[4] for damages arising from an infringement of Plaintiff's constitutional rights." Complaint ¶ 6. So long as Murphree's federal claims are properly before the Court, 28 U.S.C. § 1367 permits the Court to exercise supplemental jurisdiction over his state law claims. See e.g. Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 742 (11th Cir. 2006). However, Defendants have moved to dismiss Murphree's federal claims See generally Motions. In the event the Court determines that Murphree's federal claims are due to be

---

[4]   Viewed in context, the "14" appears to be a typographical error. The Court reads this allegation as invoking jurisdiction based on Murphree's claim in Count III that Defendants violated 42 U.S.C. § 1983. See Complaint at 9-10.

dismissed at this early stage of the proceedings, Eleventh Circuit precedent suggests that, although the Court has discretion to retain jurisdiction over the state law claims, the better course of action is to decline to exercise such jurisdiction in favor of the state court.  Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004)(where all federal claims are dismissed prior to trial, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state law claims." (citing L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 428 (11th Cir. 1984)).  Thus, the Court will first consider Defendants' arguments with respect to the merits of Murphree's federal claims.

### A.    Count III: "Damages Pursuant to 42 U.S.C. § 1983"

The Court opts to begin its consideration of Murphree's federal claims with Count III in which Murphree seeks damages and declaratory relief against the "condominium association," pursuant to 42 U.S.C. § 1983, for violation of Plaintiff's "speaking rights" under the First Amendment of the United States Constitution.  Complaint at ¶¶ 53, 56.  In support of his claim, Murphree alleges that "Defendant(s) . . . is a state actor for purposes of first amendment analysis." Id. at ¶ 55.[5]  He cites two decisions, Shelley v. Kraemer, 334 U.S. 1 (1948), and Gerber v. Longboat Harbour N. Condo. Inc., 757 F. Supp.1339 (M.D. Fla. 1991), which he contends stand for the proposition that "a condominium association attempting to enforce a covenant contained in a declaration of condominium constitutes state action for purposes of First Amendment analysis and § 1983."  Complaint at ¶ 54.  In the Motions, Defendants argue that Murphree's § 1983 claim must be dismissed because Murphree has

---

[5]    Although Murphree makes a reference to "Defendant(s)," see Complaint at ¶ 55, Count III appears to be directed at one Defendant, the "condominium association," which Murphree identifies as being Tides. Even if any of the other Defendants are named as Defendants to Murphree's § 1983 claim, the Court notes that they are all private entities and individuals, and the analysis would be the same.

"failed to allege facts showing the action of the Tides is fairly attributable to the state of Florida," and thus he fails to allege an "essential element of a claim brought under Section 1983." Tides Motion at 3; see also id. at 7-9; Pulte Motion at 3, 9-12.  In his Response, Murphree argues generally that "the Freedom to display the American Flag Act of 2005 makes the private discrimination of the Defendants actionable under the 14th amendment." Response at 5.

Title 42 section 1983 "provides individuals with a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States that are committed under color of state law." Brown v. City of Huntsville, Ala., 608 F.3d 724, 733 n.12 (11th Cir. 2010) (citation omitted); see 42 U.S.C. § 1983.  To prevail on such a claim, a § 1983 plaintiff is required to establish that the defendant, acting under color of state law, deprived him of a constitutional right. Soldal v. Cook Cnty.,Ill., 506 U.S. 56, 60 n.6 (1992). Because § 1983 applies only to actions taken under color of state law, private actors are not ordinarily subject to liability. Sims v. Hassenplug, No. 4:05-cv-155 (CDL), 2006 WL 2085481, at *4 (M.D. Ga. July 25, 2006).

"Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1277 (11th Cir. 2003)(quoting Amer. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)). Nevertheless, the Court recognizes that a defendant can be found to act under color of state law, and thus be subject to § 1983 liability, even if he is not an officer of the state if "he is a willful participant in joint action with the State or its agents." Harvey v. Harvey, 949

F.2d 1127, 1133 (11th Cir. 1992)(quoting <u>Dennis v. Sparks</u>, 449 U.S. 24, 27 (1980)). Indeed, the Eleventh Circuit Court of Appeals has held that "private defendants can be held liable in a § 1983 action if they act in concert with the state officials in depriving a plaintiff of constitutional rights." <u>Bendiburg v. Dempsey</u>, 909 F.2d 463, 468 (11th Cir. 1990). "'The traditional definition of acting under color of state law requires that the defendant in a [section] 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" <u>Myers v. Bowman</u>, 713 F.3d 1319, 1329 (11th Cir. 2013)(quoting <u>West v. Atkins</u>, 487 U.S. 42, 49 (1988)).[6] As such, the Eleventh Circuit has explained that to hold a private party liable as a state actor, the Court

> must conclude that one of the following three conditions is met: (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ('State compulsion test'); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ('public function test'); or (3) 'the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]' ('nexus/joint action test').

---

[6] "Although § 1983 technically requires that the action in question be taken 'under color of [state] law,' this requirement is considered <u>in pari materia</u> with the Fourteenth Amendment's state action requirement." <u>Focus on the Family</u>, 344 F.3d at 1276 n.4; <u>see also</u> <u>Bell v. HCR Manor Care Facility of Winter Park</u>, 432 F. App'x 908, 911 n.5 (11th Cir. 2011)("Conduct which satisfies the 'state action' requirement of the Fourteenth Amendment also satisfies the 'under color of state law' requirement of section 1983" (citing <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 935 (1982))); <u>Carlin Commc'n, Inc. v. S. Bell Tel. and Tel. Co.</u>, 802 F.2d 1352, 1357 n.1 (11th Cir. 1986). Thus references to "color of state law" and the "state action" requirement are synonymous in the Court's discussion. <u>See</u> <u>Focus on the Family</u>, 344 F.3d at 1276 n.4; <u>Carlin Commc'n</u>, 802 F.2d at 1357 n.1.

Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001)(citing NBC, Inc. v. Commc'ns Workers of Am., 860 F.2d 1022, 1026-27 (11th Cir. 1988)).[7]

In Loren v. Sasser, 309 F.3d 1296 (11th Cir. 2002), the Eleventh Circuit Court of Appeals considered whether a property owners association's enforcement of deed restrictions constituted state action under § 1983.  The court concluded that the enforcement of a deed restriction which prohibited homeowners from posting a "For Sale" sign in their front yard to expedite the sale of their house, even combined with potential judicial enforcement of the restriction, did not constitute state action for purposes of § 1983.  Loren, 309 F.3d at 1303.  As such, the court affirmed the district court's conclusion that the homeowners' claim that the enforcement of the deed restriction violated their rights under the First and Fourteenth Amendments failed.  Id.  In reaching this decision, the court observed that "[a]ctions by private organizations may be considered state action only if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  Id. (internal quotations and citations omitted).  By enforcing the deed restriction, the court concluded the property owner's association was "not acting under state law."  Id.; accord Barr v. Camelot Forest Conservation Ass'n, Inc., 153 F. App'x 860, 862 (3d Cir. 2005)(homeowners' association's removal of "for sale" signs from landowner's property and enforcement of deed restriction did not involve state action necessary to § 1983 claim alleging violation of First and Fourteenth Amendments); Lennon v. Overlook Condo. Ass'n, No. 08-357 (MJD/SRN), 2008 WL 2042636, at *6 (D. Minn. May

---

[7] "The plaintiff need only establish that the defendant is a state actor under one of these three tests."  Cohen v. World Omni Fin. Corp., 457 F. App'x 822, 829 (11th Cir. 2012)(citing Willis v. Univ. Health Servs., Inc., 993 F.2d 837, 840 (11th Cir. 1993)).

13, 2008)(because the power to assess fines or impose a lien on a condominium unit is not an exclusive state power, a condominium association is not a state actor when it levies fines for violation of an association bylaw); Fromal v. Lake Monticello Owners' Ass'n, Inc., No. Civ.A. 3:05-CV-00067, 2006 WL 1195778, at *1 (W.D. Va. May 3, 2006)(granting motion to dismiss § 1983 claim against homeowners' association; "Defendants are all private parties, and Plaintiffs' claims arise from Defendants' violations of private covenants and agreements"); Kalian at Poconos, LLC v. Saw Creek Estates Comty. Ass'n, Inc., 275 F. Supp.2d 578, 588-90 & n.14 (M.D. Pa. 2003)("public function" § 1983 analysis not applicable to community association and individual members of the association where association had only the authority to maintain roads and utilities and collect dues, but could do "little else," and thus, was not the "functional equivalent" of a municipal corporation); but see Sabghir v. Eagle Trace Cmty. Ass'n, Inc., No. 96-6964-CIV-HURLEY, 1997 WL 33635315, at *2 (S.D. Fla. April 30, 1997)(denying motion to dismiss complaint seeking injunctive relief against homeowners' association brought by resident alleging that the association infringed his First Amendment right to political speech by prohibiting homeowner, a candidate for public office, from displaying campaign signs in his yard; the court determined that the plaintiff was entitled to offer proof as to whether association's enforcement of restrictive covenants constituted state action).[8]

---

[8]   Reaching a similar conclusion, the court in Timis v. Woodmere Lakes Homeowner's Ass'n, Inc., No. 13-61209-CIV, 2013 WL 3711688, at *3 (S.D. Fla. July 12, 2013), explained that while Chapter 720, Florida Statutes, recognizes non-profit corporations that operate as homeowners' associations, that fact does not in and of itself provide a sufficient nexus to attribute the private actions of the association or its officers or employees to the state under any of the three tests for attributing state action to private conduct.  See Timis, 2013 WL 3711688, at *3.

Like the Eleventh Circuit, the state courts of Florida have also determined that homeowners' associations existing under the laws of the State of Florida, are not state actors for purposes of fulfilling the "color of state law" element of § 1983.  See Brock v. Watergate Mobile Home Park Ass'n, Inc., 502 So.2d 1380 (Fla. 4th DCA 1987).  In Brock, the state appellate court observed that:

> A homeowner's association lacks the municipal character of a company town.  In the case of an association, the homeowners own their own property and hold title to the common areas pro rata.  Moreover, the services provided by a homeowners association, unlike those provided in a company town, are merely a supplement to, rather than a replacement for, those provided by local government.  As such, it cannot be said that the homeowners' association in this case acts in a sufficiently public manner so as to subject its activities to a state action analysis. Moreover, the association's maintenance, assessment, and collection activities are not sufficiently connected to the State to warrant a finding of state action.  The state cannot be implicated in the association's activities solely because the association is subject to State law.

Brock, 502 So2d at 1382.  Likewise, in Quail Creek Prop. Owners Ass'n. Inc. v. Hunter, 538 So.2d 1288 (Fla. 2d DCA 1989), a Florida appellate court reversed a final summary judgment in which the trial court declared that a private homeowners' association's restrictive covenant prohibiting the display of any signs by lot owners on their lots except signs identifying the owners' names and address violated the First and Fourteenth Amendments of the Constitution.  538 So.2d at 1289.  In reversing this decision, the appellate court concluded that "neither the recording of the protective covenant in the public records, nor the possible enforcement of the covenant in the courts of the state, constitutes sufficient 'state action' to render the parties' purely private contracts relating to the ownership of real property unconstitutional."  Id.

In the face of this authority, Murphree cites the decisions in <u>Shelley v. Kraemer</u>, 334 U.S. 1 (1948), and <u>Gerber v. Longboat Harbour N. Condo., Inc.</u>, 757 F. Supp. 1339 (M.D. Fla. 1991), as providing a basis for his assertion that "a condominium association attempting to enforce a covenant contained in a declaration of condominium constitutes state action for purposes of First Amendment analysis and § 1983." Complaint at ¶ 54. The Court in <u>Shelley</u> held that state judicial enforcement of racially restrictive private covenants in land deeds constituted action by the state that violated the Equal Protection Clause of the United States Constitution. 334 U.S. at 14-15, 20. There, the petitioners were subject to state court orders divesting them of title in their properties. <u>Shelley</u>, 334 U.S. at 6, 7. Thus, in <u>Shelley</u>, the Court considered the fact that a state court order was in place to enforce the discriminatory restrictive covenants at issue in finding state action. Indeed, the Court noted that "but for the active intervention of the state courts, supported by the full panoply of state power, petitioners would have been free to occupy the properties in question without restraint." <u>Id.</u> at 19. In contrast, here neither Murphree nor Defendants have invoked state enforcement procedures, and the fact that the fine imposed by Defendants potentially may be the subject of a state court lawsuit is not sufficient to convert Defendants' restrictions and enforcement thereof into state action. <u>See</u> <u>Shelley</u>, 334 U.S. at 13 (restrictive agreements standing alone, and voluntary adherence to their terms, does not constitute state action). Indeed, the mere potential of a lawsuit, as opposed to an immediately enforceable final judgment, is insufficient to constitute state action for purposes of § 1983. <u>Dunwoody Homeowners Ass'n, Inc. v. DeKalb County, Ga.</u>, 887 F.2d 1455, 1459 & n.4 (11th Cir. 1989); <u>Paisey v. Vitale</u>, 807 F.2d 889, 894 (11th Cir. 1986); <u>Timis</u>, 2013 WL 3711688, at *3.

Notably, the Eleventh Circuit has recognized that the holding in Shelley "has not been extended beyond the context of race discrimination." Davis v. Prudential Secs., Inc., 59 F.3d 1186, 1191 (11th Cir. 1995); see also United Egg Producers v. Standard Brands, Inc., 44 F.3d 940, 943 (11th Cir. 1995). Indeed, in Loren, before determining that the threat of judicial enforcement of the homeowners' association restriction preventing the display of a "For Sale" sign does not rise to the level of state action, the Eleventh Circuit explicitly distinguished Shelley as involving "the enforcement of a racially restrictive covenant," and observed that the holding in Shelley "has not been extended beyond race discrimination." Loren, 309 F.3d at 1303. Moreover, the Eleventh Circuit has opined that subsequent to Shelley, the concept of state action has "been narrowed by the Supreme Court." Davis, 59 F.3d at 1191 (citing cases). As such, in the face of the authority previously discussed, Murphree's citation to Shelley is of little assistance to his cause.

Murphree also cites to Gerber, 757 F. Supp. 1339 (Gerber II), in which another division of this Court in 1991, determined that a condominium association's restriction prohibiting condominium unit owners from displaying the American flag except on designated holidays, was state action such that the condominium association was subject to a homeowner's § 1983 claim that the association violated the First and Fourteenth Amendments. The 1991 decision in Gerber II was actually a reconsideration of an earlier decision, Gerber v. Longboat Harbour N. Condo., Inc., 724 F.Supp. 884 (M.D. Fla. 1989)(Gerber I), vacated in part, 757 F. Supp. 1339 (M.D. Fla. 1991)(Gerber II), where the court rejected the condominium association's argument that it was a private actor because it had not assumed substantially all of the functions of a governmental entity, and thus, was not subject to First Amendment

-16-

restrictions as incorporated through the Fourteenth Amendment.   724 F.Supp. at 886.

Relying on the Supreme Court's decision in Shelley, supra, the Gerber I court found that the

condominium association qualified as a state actor for purposes of the condominium unit

owners' § 1983 claim, because "judicial enforcement of private agreements contained in a

declaration of condominium constitute state action and bring the heretofore private conduct

within the ken of the Fourteenth Amendment, through which the First Amendment guarantee

of free speech is made applicable to the states." Gerber I, 724 F. Supp. at 886.  As such, the

Gerber I court found that Shelley instructed that while the Fourteenth Amendment does not

reach purely private conduct, "judicial enforcement of restrictive covenants constitutes state

action." Id. (citing Shelley, 334 U.S. 1).[9]

    As with Shelley, the Gerber decision is readily distinguishable from the instant case

as Murphree has failed to allege any "judicial enforcement" of the Tides' restrictive covenants.

Moreover, in light of the intervening precedent, limiting Shelley and holding that private

homeowners' associations are not state actors acting under color of state law when enforcing

restrictive covenants, the Court does not find the reasoning of the Gerber court to be

persuasive. See generally Goldberg v. 400 E. Ohio Condo. Ass'n, 12 F. Supp.2d 820, 822-

23 (N.D. Ill. 1998)(finding that Gerber "is not good law," because Gerber provides no

---

[9]   The Gerber I court granted the plaintiffs' motion for summary judgment and enjoined the defendant condominium association "from interfering with Plaintiff's display of the Flag in compliance with the terms of § 718.113, Florida Statutes." Gerber I, 724 F. Supp. at 887-88.  On reconsideration in Gerber II, the court reaffirmed its determination that "judicial enforcement of private agreements contained in a declaration of condominium constitutes state action," and reaffirmed partial summary judgment as to the issue of state action. Gerber II, 757 F. Supp. at 1341.  The Gerber II decision reversed the summary judgment as to the constitutional violation, and the injunction. Id. at 1342.  In determining that the condominium association's conduct represented "state action," neither Gerber I nor Gerber II expounded upon what "judicial enforcement" took place so as to make the condominium association's conduct "state action" and "under color of state law."

indication that the condominium association actually secured a judgment or order from a state court, and finding that "there is no state action inherent in the possible future state court enforcement of a private property agreement.")

The fact that Murphree alleges that Defendants violated his First Amendment rights does not change the "color of state law" analysis.  Indeed, in Greiser v. Whittier Towers Apts. Ass'n Inc., __F. App'x __, 2014 WL 26082 (11th Cir. Jan. 3, 2014), the Eleventh Circuit affirmed dismissal of a  plaintiff's § 1983 claim alleging that the defendants, a residential apartment association and three of its board members, violated his First Amendment rights by censoring his newsletter to other homeowners.  In doing so, the court explained that:

> [Plaintiff's] allegations failed to establish that the State of Florida or any state entity "coerced or . . . significantly encouraged" the Association to censor [plaintiff's] newsletter or evict [plaintiff], see Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001); the Association performed a function "exclusively reserved to the state" when it . . . censored [plaintiff's] newsletter, see Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co., 802 F.2d 1352, 1361 (11th Cir. 1986); or the Association acted as a "surrogate for the state" by virtue of being incorporated under state law or using its laws to evict [plaintiff].

Id.; see also e.g. Carlin Commc'n, 802 F.2d at 1357-61 (determining that privately owned utility did not engage in function traditionally performed by the state and thus was not liable to subscriber for violating its First or Fourteenth Amendment rights when it restricted message content by not transmitting subscriber's messages); compare Marsh v. Alabama, 326 U.S. 501, 506 (1946)(applying public function analysis in the First Amendment context to determine whether private property was functionally equivalent to a town).   "Without governmental action there can be no First Amendment violation." United Egg Producers, 44 F.3d at 942.  As such, a purely private decision to interfere with one's freedom of expression

-18-

is not actionable under § 1983. <u>See</u> <u>Carlin Commc'n</u>, 802 F.2d at 1357; <u>see generally</u> <u>Focus on the Family</u>, 344 F.3d at 1277 ("Section 1983's state action requirement applies regardless of the nature of the substantive deprivation being alleged").

Murphree's Complaint targets private conduct which § 1983 does not reach. None of the Defendants are a public entity or a state actor; they are three private corporations and an individual employed by one of the corporations. In the Complaint, Murphree fails to allege any <u>facts</u> that indicate a nexus between the state and the challenged conduct, or any suggestion that the Defendants acted under color of state law, and he has failed to establish that Tides is a state actor under any of the enumerated state action tests. <u>See</u> <u>Rayburn</u>, 241 F.3d at 1347. Specifically, Murphree has failed to assert any allegations demonstrating that the state or any governmental entity has exercised any coercive power or even encouraged Tides to enforce a rule prohibiting the display of the American flag in a front stoop flower pot. To the contrary, Murphree cites to both state and federal law which he alleges require condominium associations such as Tides to permit him to display the flag. <u>See</u> Complaint at ¶¶19, 25, 26. Additionally, Murphree has made no allegations suggesting that Tides has assumed <u>all</u> attributes of a state-created municipality, and thus is performing a public function that is traditionally the exclusive prerogative of the State.[10] Nor has Murphree alleged any facts suggesting that the state has intertwined or insinuated itself into a position of interdependence with Tides such that it is a joint participant in restricting Murphree's display

---

[10]  In <u>Marsh v. Alabama</u>, 326 U.S. 501 (1945), the Supreme Court held that a company-owned town could not deny residents or visitors their First Amendment rights, since running a city is a public function, which must be done in compliance with the United States Constitution. <u>Id.</u> at 506-509. As such, a visitor could not be prosecuted for distributing religious literature without a license on the sidewalk in the town's business district. <u>Id.</u> at 509.

of the American flag.  Compare Focus on the Family, 344 .3d at 1278-79 (reversing final

judgment where there is "palpable evidence" that the state acting through a private entity with

which it had a contract, to cause a third party's harm so as to constitute state action under

the nexus/joint action test); Crenshaw v. Lister, 509 F. Supp.2d 1230, 1238 (M.D. Fla.

2007)(pretrial detainee's allegations in the complaint concerning the contractual relationship

between defendant hospital and the sheriff's office were sufficient at pleading stage to allege

action by the hospital was under color of state law in connection with delay of treatment).

Moreover, Murphree's conclusory allegation that "a condominium association attempting to

enforce a covenant contained in a declaration of condominium constitutes state action for

purposes of First Amendment analysis and § 1983," and that "Defendant(s) . . . is a state

actor for purposes of first amendment analysis," Complaint ¶¶ 54, 55, need not be accepted

as true.  Franklin v. Curry, 738 F.3d 1246, 1248 n.1 (11th Cir. 2013)(when considering a

motion to dismiss a complaint for failure to state a claim, a court "afford[s] no presumption

of truth to legal conclusions and recitations of the basic elements of a cause of action."); see

also e.g. Timis, 2013 WL 3711688, at *3 (plaintiff's "'naked assertion'" that homeowner's

association and its president acted under color of state law is insufficient to state a § 1983

claim; "at no place does Plaintiff set forth facts making such an allegation plausible").

        Assuming all of Murphree's factual allegations to be true, the Court concludes that

Murphree has failed to allege any set of facts from which the Court may infer state action on

the part of Tides, or by any of the named Defendants.  Here, acting on its own, without any

state involvement, Tides applied its Guidelines regarding the display of the American flag and

other displays in outside flower pots to Murphree's conduct, and engaged in private

enforcement of its determination that Murphree was in violation of those Guidelines.  Absent

any state action, Murphree fails to establish a § 1983 claim for relief that is plausible on its

face, and thus Count III is due to be dismissed for failure to state a claim upon which relief

may be granted. See Bell v. HCR Manor Care Facility of Winter Park, 432 F. App'x 908, 911

(11th Cir. 2011); Timis, 2013 WL 3711688, at *3; see generally Iqbal, 556 U.S. at 677-78;

Twombly, 550 U.S. at 570.

    **B.**    **Count I: "Action for Declaratory Relief and Damages Pursuant To 120 Stat. § 572"**

In Count I of his Complaint, Murphree alleges that a Defendant[11] violated his rights

under the Freedom to Display the American Flag Act of 2005.  Complaint ¶¶ 44-47.  Section

5 of Title 4 of the United States Code, provides:

> The following codification of existing rules and customs pertaining to the display and use of the flag of the United States of America is established for the use of such civilians or civilian groups or organizations as may not be required to conform with regulations promulgated by one or more executive departments of the Government of the United States . . . .

4 U.S.C. § 5 (2012).  In 2006, Congress passed the Freedom to Display the American Flag

Act of 2005, Pub. L. No. 109-243, 120 Stat. 572 (2006).[12]  The Act is codified as a note to 4

U.S.C. § 5, and provides, in part, that:

> A condominium association, cooperative association, or residential real estate management association may not adopt or

---

[11]   Murphree generally refers to Defendant, but fails to identify which Defendant he believes violated his rights as to this claim.

[12]   See 152 Cong. Rec. H6010-06 (daily ed. July 27, 2006)(2006 WL 2085105 (Cong. Rec.)); "President Signs H.R. 42, the "Freedom to Display the American Flag Act of 2005," available at http://georgewbush-whitehouse.archives.gov/news/releases/2006/07/2006074-5.html (last visited Mar. 10, 2014).

> enforce, any policy, or enter into any agreement, that would restrict or prevent a member of the association from displaying the flag of the United States on residential property within the association with respect to which such member has a separate ownership interest or a right to exclusive possession or use.

20 Stat. 572 § 3. The Act further states that it does not abrogate "any rule or custom pertaining to the proper display or use of the flag," id. § 4(1)(referring to 4 U.S.C. § 1 et seq.), and shall not be considered inconsistent with

> any reasonable restriction pertaining to the time, place, or manner of displaying the flag of the United States necessary to protect a substantial interest of the condominium association, cooperative association, or residential real estate management association.

Id. § 4(2).

In Count I of his Complaint, Murphree seeks "an Order declaring the actions of the condominium association invalid" and awarding him damages, costs and attorneys' fees. Complaint at 8. In doing so, Murphree contends that the Act prohibits the Defendants from curtailing his "right to display the United States Flag outside of his condominium residence under the guise of enforcing the association covenants and restrictions under Federal law." Id. at ¶ 45. In its Motion, Defendant Tides argues that the conduct alleged does not violate the Act, because Murphree does not have a "separate ownership interest" or "right to exclusive possession or use" to the "covered entrance of his unit" outside of his front door, and that Murphree does not "hold[ ] legal title" to the space outside of his front door. Additionally, Tides contends that the Act does not apply to "the common elements of Tides." Tides Motion at 5-6; see also Pulte Motion at 7-9. Murphree responds that Tides' rules permit a condominium owner to place personal property in the form of a flower pot by his

front door, and that the condominium owner "has 'a right to exclusive possession or use' of the flower pot and its contents," including a flag planted therein.  Response at 4.

Although Murphree does not specifically allege the legal basis for his declaratory relief claim, his Count I claim for declaratory judgment appears to be brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.   The federal Declaratory Judgment Act authorizes a federal court, "in a case of actual controversy within its jurisdiction[,]" to "declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201. However, "the Declaratory Judgment Act does not, of itself, confer jurisdiction upon federal courts." Stuart Weitzman, LLC v. Microcomputer Res., Inc., 542 F.3d 859, 861-62 (11th Cir. 2008). "Rather, a suit brought under the [Declaratory Judgment] Act must state some independent source of jurisdiction." Fed. Election Comm'n v. Reform Party of the U.S., 479 F.3d 1302, 1307 n.5 (11th Cir. 2007).  As such, the Declaratory Judgment Act does not enlarge a federal court's jurisdiction; rather, it is a procedural mechanism which operates with respect to an established case or controversy.  GTE Directories Pub. Corp. v. Trimen Am., Inc., 67 F.3d 1563, 1567 (11th Cir. 1995).  Thus, the Court must determine "'whether or not the cause of action anticipated by the declaratory judgment plaintiff arises under federal law.'" Stuart Weitzman, 542 F.3d at 862 (quoting Hudson Ins. Co. v. Am. Elec. Corp., 957 F.2d 826, 828 (11th Cir. 1992)).  The question is, "'whether, absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court.'" Stuart Weitzman, 542 F.3d at 862 (citation omitted).  Because Murphree's declaratory judgment claim is premised on a violation of the Freedom to Display the American Flag Act,  the Court turns to the question of whether a violation of such Act can be the basis of a suit in federal court.

Legislative history regarding the Act, which became law on July 24, 2006, is sparse. The Congressional Record reports that the House of Representatives considered the bill on June 27, 2006. 152 Cong. Rec. H4574-02 (daily ed. June 27, 2006)(2006 WL 1749721 (Cong. Rec.)). The bill's sponsor, Representative Roscoe Bartlett, of Maryland, introduced H.R. 42 as a bill "to ensure that the right of an individual to display the flag of the United States on residential property not be abridged." Id. at 4574 (Statement of Rep. Roscoe Bartlett).[13]   Representative Bartlett explained that he proposed the bill in response to a reported problem encountered by individuals wishing to fly the American flag at residences governed by homeowners' or condominium associations, and noted that various states had adopted similar legislation. Id. at 4575. He explained: "It is a very simple bill. It simply says that a homeowner or condominium owner cannot be prohibited from flying the flag of his country. It also says that the association may place reasonable limits on the time and the manner of displaying the flag." Id. Representative Dennis Moore of Kansas spoke in support of the bill, saying that the bill "ensures that Americans may display the American flag wherever they live," by providing that a condominium association "may not prohibit a resident of the association from displaying the American flag on their property within the association." Id. (Statement of Rep. Moore). And Representative Gene Green of Texas, stated that the "bill would allow homeowners to fly the American flag on their own property in accordance with the U.S. Flag Code." Id. (Statement of Rep. Gene Green). The United States House of Representatives passed the bill on June 27, 2006, by voice vote. Id. The United States

---

[13]   Representative Bartlett first introduced the bill on January 4, 2005. See Pub. L. No. 109-243, 2006 HR 42; 151 Cong. Rec. H71-02, H72 (daily ed. Jan. 4, 2005)(2005 WL 17513 (Cong. Rec.)).

Senate engaged in no discussion of the bill, which passed by the unanimous consent of the members of the Senate on July 17, 2006.   152 Cong. Rec. S7650-05 (daily ed. July 17, 2006)(2006 WL 1983083 (Cong. Rec.)).

The parties cite no court decision, and the Court could locate none, discussing the Freedom to Display the American Flag Act of 2005.  However, in 1993, the Eleventh Circuit Court of Appeals considered the predecessor statute to 4 U.S.C. § 5, and determined that the United States "Flag Code" is "merely advisory and is not intended to proscribe behavior." Dimmitt v. City of Clearwater, 985 F.2d 1565, 1573 (11th Cir. 1993).   In Dimmitt, an automobile dealership brought an action challenging the constitutionality of a city ordinance regulating the display of signs, flags and other means of graphic communications.  The dealership brought the challenge after the City of Clearwater prohibited the dealership from flying 23 American flags along the highway bordering the dealership's property.  The city required the dealership to take down 21 flags to comply with the city ordinance, which permitted the display of only two flags on nonresidential property.  985 F.2d at 1568.   In response to the dealership's lawsuit, the city filed a counterclaim alleging a violation of the United States Flag Code, 36 U.S.C. §§ 174-176, et seq., asserting that the dealership was flying the American flag in darkness and in inclement weather, and using the American flag for advertising purposes.  Id. at 1568, 1572-73.  Determining that the city's ordinance was an overbroad restriction of protected speech, the court affirmed the district court's order declaring a portion of the ordinance unconstitutional.  Id. at 1568.  With respect to the city's counterclaim, the court also affirmed the district court, this time finding that the court properly dismissed the counterclaim.  Id.  In doing so, the Eleventh Circuit determined that a "brief

review of the display provisions of the Flag Code indicates that the statute was not intended to proscribe conduct." 985 F.2d at 1573. In reaching this determination, the court looked first to the language of 36 U.S.C. § 173 (1992), which although the Flag Code was recodified in 1998 as 4 U.S.C. § 5, remains the same today, see 4 U.S.C.A. § 5 (Historical and Statutory Notes). Reviewing the statutory language,[14] the court observed that the "Flag Code codifies various existing rules and customs pertaining to the display of the American flag" for persons not required to comply with governmental regulations regarding flag displays. Dimmitt, 985 F.2d at 1573.[15] The court noted that the statute consistently used the term "should" rather

---

[14]   The following codification of existing rules and customs pertaining to the display and use of the flag of the United States of America is established for the use of such civilians or civilian groups or organizations as may not be required to conform with regulations promulgated by one or more executive departments of the Government of the United States . . . .

4 U.S.C. § 5

[15]   The Flag Code, referred to by the Eleventh Circuit in Dimmitt, 985 F.2d at 1573, as it existed at the time of the Dimmitt decision, was as follows:

36 U.S.C. § 173 (1992) was a "codification of existing rules and customs pertaining to the display and use of the flag." Congress recodified this section in 1998, adding it to Chapter 1 of Title 4 of the United States Code, as 4 U.S.C. § 5. See Pub. L. No. 105-225 § 2(a) (Aug. 12, 1998); see also 4 U.S.C.A. § 5 (Historical and Statutory Notes).

36 U.S.C. § 174 (1992), concerned "Time and occasions for display" of the American Flag. 36 U.S.C. § 174 (1992). Congress re-codified this provision in 1998, and it now appears at 4 U.S.C. § 6. See Pub. L. No. 105-225 § 2(a) (Aug. 12, 1998); see also 4 U.S.C.A. § 6 (Historical and Statutory Notes).

36 U.S.C. § 175 (1992), addressed "Position and manner of display" of the American flag. See 36 U.S.C. § 175 (1992). This provision is now found, in substantial part, at 4 U.S.C. § 7. See Pub. L. No. 105-225 § 2(a) (Aug. 12, 1998); see also 4 U.S.C.A. § 7 (Historical and Statutory Notes).

36 U.S.C. § 176 (1992), concerned "Respect for Flag." 36 U.S.C. §

(continued...)

than "shall" when discussing the customs.  Id.  Moreover, the court observed that "Congress attached no penalty provisions for noncompliance with the display provisions in sections 174-76."  Id.  In contrast the court noted that in 36 U.S.C. § 181, Congress enacted specific penalties for persons manufacturing service flags or lapel buttons without a license.  Id. Importantly, the court noted that "even if the Flag Code were intended to proscribe behavior," the City made no showing "that the Flag Code contains an implicit right of action upon which the City may found its counterclaim."  Id.

In reaching its decision, the Dimmitt court cited with approval the district court decision in Holmes v. Wallace, 407 F. Supp. 493 (D. Ala. 1976), aff'd, 540 F.2d 1083 (5th Cir. 1976);[16] see Dimmitt, 985 F.2d at 1573.[17]  In Holmes, the court held that the Flag Code provided the NAACP with no basis to challenge the state's display of the Confederate flag at a higher elevation than the American flag.  Holmes, 407 F. Supp. at 496; see also Dimmitt, 985 F.2d at 1573.  The Holmes court identified the United States Flag Code as 36 U.S.C. §§ 173-178, id. at 495, and found:

> An examination of the flag code section of [former] Title 36 as a whole leads to the conclusion that §§ 173-178, as well as the associated §§ 170-173, are not intended to proscribe conduct but are merely declaratory or advisory.  The language of § 173

---

[15](...continued)
176 (1992).  This provision is now found at 4 U.S.C. § 8.  See Pub. L. No. 105-225 § 2(a) (Aug. 12, 1998); see also 4 U.S.C.A. § 8 (Historical and Statutory Notes).

[16]  In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[17]  The Dimmitt court noted that in N.A.A.C.P. v. Hunt, 891 F.2d 1555 (11th Cir. 1990), the Eleventh Circuit "held, on res judicata grounds, that the judgment in Holmes precluded relitigation of the NAACP's Flag Code claim."  Dimmitt, 985 F.2d at 1573 n.8.

> and the recurrent use of the word "should" . . . are indicative of
> a lack of penal purpose.

Holmes, 407 F. Supp. at 496;.   In reaching this conclusion, the Holmes court cited a

Delaware district court decision, which also dismissed a claim brought pursuant to the Flag

Code, saying:

> "There is yet another reason for dismissing the complaint
> herein.   The action is founded upon the defendant's alleged
> violation of 36 U.S.C.A. § 175(c)(1953).   Title 36 is not intended
> to proscribe behavior.   It is fashioned as an expression of
> prevalent custom regarding the display of the American flag.
> Section 173 [now 4 U.S.C. § 5] thereof so stated: 'The following
> codification of existing rules and customs pertaining to the
> display and use of the flag of the United States of America is
> established for the use of such civilians or civilian groups or
> organizations as may not be required to conform with regulations
> promulgated by one or more executive departments of the
> Government of the United States.'
>
> It is apparent that the sections are a codification of
> existing 'rules and customs' and are intended for the 'use' of
> people not required to conform with other regulations.   If the
> purpose is to compel certain behavior then the selection of the
> word 'use' is odd draftsmanship. . . ."

Holmes, 407 F. Supp. at 495 (quoting State of Delaware ex rel. Trader v. Hodsdon, 265 F.

Supp. 308, 310 (D. Del. 1967)).

The Holmes court also noted that the Flag Code did not attach any penalties or

sanctions for violation of its provisions, specifically § 175 (now 4 U.S.C. § 7).   Id. at 495, 496.

In doing so, it quoted with approval the Trader court's observation that:

> "whenever in Title 36 certain behavior was intended to be
> absolutely proscribed a specific section followed attaching
> penalties.   For example, § 182(a-c) relates to service lapel
> buttons and who is entitled to wear them.   Immediately following

> these sub-sections appears § 182d which provides the penalties for violation of § 182(a-c). If Congress specifically provided for penalties to attach to § 182(a-c) and did not so provide with regard to § 175 then the implication is clear that § 175 was intended merely as an expression of proper usage, not to mandate behavior."

Holmes, 407 F. Supp. at 495 (quoting Trader, 265 F. Supp. at 310). Ultimately, the Trader court dismissed plaintiff's claim finding that the Flag Code, 36 U.S.C. § 175, in addressing the position of the American flag when flown or carried, "is not intended to proscribe behavior" but rather is "fashioned as an expression of prevalent custom regarding the display of the American flag." Trader, 265 F. Supp. at 310 (citing 36 U.S.C. § 173). As such, the Trader concluded that "there is no provision in Title 36 permitting a state or a private party to sue to compel compliance with its directives." Id. Agreeing with the Trader decision and the small number of other courts to have addressed the issue, the court in Holmes unequivocally concluded that 36 U.S.C. §§ 173-178, the predecessor of the current Flag Code, provided no private right of action. Holmes, 407 F. Supp. at 496. (citing Lapolla v. Dullaghan, 63 Misc.2d 157, 311 N.Y.S.2d 435 (N.Y. 1970)); see also Sadlier v. Payne, 974 F. Supp. 1411, 1415 n.3 (D. Utah 1997)(part of Title 36, known as the "flag code," "is not . . . intended to proscribe conduct," and does not provide any remedy for its violation. As such, a "private plaintiff cannot premise a civil rights violation on a claimed violation of Title 36"); Trader, 265 F. Supp. at 310 (dismissing for lack of subject matter jurisdiction state's claim seeking to enjoin defendant from flying the flag of the United Nations above and to the right of the American flag in front of his residence).

"'[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.'" Touche Ross &

Co. v. Redington, 442 U.S. 560, 568 (1979)(quoting Cannon v. Univ. of Chicago, 441 U.S. 677, 688 (1979)).  In determining whether the Freedom to Display the American Flag Act of 2005 includes a private right of action, the Court's "task is limited solely to determining whether Congress intended to create the private right of action asserted." Touche Ross, 442 U.S. at 568.[18]  "The intent of Congress remains the ultimate issue, however, and 'unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of private remedy simply does not exist.'" Thompson v. Thompson, 484 U.S. 174, 179 (1988)(quoting Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 94 (1981)).  Thus, "'[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.'" McDonald v. S. Farm Bureau Life Ins. Co., 291 F.3d 718, 723 (11th Cir. 2002)(quoting Alexander v. Sandoval, 532 U.S. 275, 286 (2001)).

In determining whether Congress intends to provide a private remedy, the Eleventh Circuit instructs that a court must first "look to the statutory text for 'rights creating' language," which "'explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff . . .'" Love v. Delta Air Lines, 310 F.3d 1347, 1352 (11th Cir. 2002)(internal quotation marks

---

[18]  The Supreme Court has articulated four factors for a court to consider in determining whether a statute implies a private right of action: (1) whether the plaintiff is a member of the class "for whose especial benefit" the statute was enacted; (2) whether there is any indication of "legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether an implied private remedy is "consistent with the underlying purposes of the legislative scheme"; and (4) whether the cause of action is one "traditionally relegated to state law." Love v. Delta Air Lines, 310 F.3d 1347, 1351 (11th Cir. 2002)(quoting Cort v. Ash, 422 U.S. 66, 78 (1975); see also Cannon, 441 U.S. at 688 & n.9; McDonald v. S. Farm Bureau Life Ins. Co., 291 F.3d 718, 722-23 (11th Cir. 2002).  However, while these four factors are "relevant," the "central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." Touche Ross, 442 U.S. at 575-76; see also Love, 310 F.3d at 1352 (legislative intent to create a private right of action is the "touchstone" of the analysis (citing Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001)).

and citations omitted).  Also relevant is whether the "statutory structure" already "provides a discernible enforcement mechanism," which would counsel against the recognition of a private right of action to bring a lawsuit in the district court.  Id. at 1353.  Lastly, if the statutory text and structure do not conclusively resolve whether a private right of action should be implied, the court may "turn to the legislative history and context within which a statute was passed."  Id. (citing Sandoval, 532 U.S. at 288).  However, the Eleventh Circuit advises that legislative history should be examined "with a skeptical eye," and that "'[t]here must be clear evidence of Congress's intent to create a cause of action.'"  Love, 310 F.3d at 1353 (citation omitted); see also McDonald, 291 F.3d at 723 ("Legislative history can be taken into account where relevant, but the central focus of judicial inquiry must be the 'text and structure' of the statute itself" (quoting Sandoval, 532 U.S. at 288)).

Upon review, the Court determines that the Freedom to Display the American Flag Act of 2005 does not provide any enforcement mechanism, or explicitly create a private right of action for individuals such as Murphree to bring a lawsuit against a condominium association. Indeed nothing in the language, structure or legislative history of the Act creates a private right of action against such entities, even by implication.  See McDonald, 291 F.3d at 721, 722.  Beginning with the language of the statute itself, see Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 16 (1979), 4 U.S.C. § 5 the statute provides that the Freedom to Display the American Flag Act of 2005 represents a "codification of existing rules and customs pertaining to the display and use of the flag . . . ."  4 U.S.C. § 5.  This is the same language found in the predecessor to § 5, cited by the Eleventh Circuit in Dimmitt as support for its determination that the Flag Code does not proscribe conduct, or provide a right

of action.  See Dimmitt, 985 F.2d at 1573.  While the Freedom to Display the American Flag Act of 2005, 120 Stat. 572, appears to regulate the conduct of a condominium association with regard to the display of the American flag by its members, it follows Section 5 of Title 4, which identifies the "following codification of existing rules and customs . . . for the use of . . . civilian groups or organizations as may not be required to conform with" federal regulations.  4 U.S.C. § 5 (emphasis added).  Moreover, the Act does not expressly or implicitly include any provision permitting a private party such as Murphree to sue to compel compliance with its directives.  As such, based upon the Act's text, structure, and legislative history, as well as the persuasive decisions in Dimmitt and Holmes, the Court concludes that the Freedom to Display the American Flag Act of 2005, 120 Stat. 572, provides no private right of action upon which the Court may assert federal question subject matter jurisdiction.

For the foregoing reasons, the Court determines that Murphree may not bring a claim under the Flag Code, clothed as an action for declaratory judgment, and invoke the Court's jurisdiction, where no right of action exists.  As such, Count I of the Complaint is due to be dismissed without prejudice for lack of subject matter jurisdiction.  See generally Nelson v. Bank of Am., N.A., 446 F. App'x 158 (11th Cir. 2011)(dismissing complaint seeking declaratory judgment that lender and home loans servicing provider failed to satisfy their loan modification obligations to mortgagor under the United States Treasurey's Home Affordable Mortgage Program (HAMP), for lack of subject matter jurisdiction, because HAMP does not create a private right of action);  Florida v. Seminole Tribe of Fla., 181 F.3d 1237, 1250 (11th Cir. 1999)(dismissing complaint because state had no implied right of action under the Indian Gaming and Regulatory Act for declaratory or injunctive relief).

**C.   Supplemental Jurisdiction**

Having determined that Murphree's federal claims are due to be dismissed, the Court next considers whether to continue to exercise supplemental jurisdiction over the remaining state law claims.   Counts II, and IV-VII of the Complaint, contain claims for relief under various state law theories.   See Complaint at 8-9, 10-13.[19]   "The decision to exercise supplemental jurisdiction over pend[e]nt state claims rests within the discretion of the district court."   Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004).   Pursuant to 28 U.S.C. § 1367(c), the Court may decline to exercise jurisdiction over a state claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).   Notably, "[a]ny one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims."   Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006).   However, upon determining that it has the discretion under § 1367(c) to decline jurisdiction, "[a district court] should consider the traditional rationales for pendent jurisdiction, including judicial economy

---

[19]   In Count II, Murphree requests that the Court declare that the actions of Tides are invalid pursuant to Fla. Stat. § 718.113(4), and award damages, fees and costs.   See Complaint at 8-9.   As discussed above, the federal Declaratory Judgment Act does not confer jurisdiction upon federal courts. Stuart Weitzman, 542 F.3d at 861-62.   "Rather, a suit brought under the [Declaratory Judgment] Act must state some independent source of jurisdiction."   Fed. Election Comm'n, 479 F.3d at 1307 n.5.   Here, Count II, in which Murphree seeks a declaration regarding a state statute, does not set forth an independent source of federal jurisdiction.

and convenience in deciding whether or not to exercise that jurisdiction." Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994).  Upon due consideration, the Court finds that judicial economy and convenience would not be served by retaining jurisdiction over the Plaintiff's state law claims.  Thus, the Court declines to exercise its supplemental jurisdiction over these claims.

For the reasons set forth above, the Court has determined that each of the federal claims in Counts I and III of the Complaint, over which Murphree alleges that Court has federal question subject matter jurisdiction, see Complaint ¶ 6, is due to be dismissed.  What remains are uniquely state law claims that are best addressed by the state courts.  The early procedural posture of the case weighs in favor of declining jurisdiction in order to allow the case to proceed fully in state court.  Moreover, when, as here, the federal claims are dismissed prior to trial, the Eleventh Circuit Court of Appeals has "encouraged district courts to dismiss any remaining state claims."  Raney, 370 F.3d at 1089; Busse v. Lee Cnty., 317 F. App'x 968, 973-74 (11th Cir. 2009) ("Since the district court 'had dismissed all claims over which it has original jurisdiction,' it therefore had the discretion not to exercise supplemental jurisdiction over [Appellant's] state law claims.  28 U.S.C. § 1367(c)(3).  Furthermore, we expressly encourage district courts to take such action when all federal claims have been dismissed pretrial.").  See also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine- judicial economy, convenience, fairness, and comity- will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Upon consideration of the § 1367 factors and the "traditional rationales for pendent jurisdiction, including judicial economy and convenience," see Palmer, 22 F.3d at 1569, the Court declines to exercise supplemental jurisdiction over the remaining state law claims alleged in the Complaint.  Accordingly, Counts II, and IV-VII of the Complaint are due to be dismissed without prejudice to refiling in the appropriate state court.

Upon due consideration, it is hereby

**ORDERED**:

1. Defendants', Tides Condominium At Sweetwater By Del Webb, Inc., Sweetwater By Del Webb Master Homeowners' Association, Inc., Continental Group, Inc., And Katie Hollis, Motion To Dismiss And Incorporated Memorandum Of Law (Doc. 9) is **GRANTED IN PART AND DENIED IN PART**, and Defendant Pulte Home Corporation Motion To Dismiss Complaint And Incorporate Memorandum Of Law (Doc. 10) is **GRANTED**, as follows:

   A. Plaintiff Larry Murphree's Complaint (Doc. 1) is **DISMISSED**, as follows:

      i. Count I of the Complaint is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction;

      ii. Count III of the Complaint is **DISMISSED**; and

      iii. Counts II, IV, V, VI, and VII are **DISMISSED WITHOUT PREJUDICE** to Plaintiff refiling them in state court.

       B.       Defendants', Tides Condominium At Sweetwater By Del Webb, Inc., Sweetwater By Del Webb Master Homeowners' Association, Inc., Continental Group, Inc., And Katie Hollis, Motion To Dismiss And Incorporated Memorandum Of Law (Doc. 9) is **DENIED** to the extent that it seeks an award of attorney's fees.  (See Doc. 9 at 10).

2.     The Clerk of the Court is directed to terminate all pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 31st day of March, 2014.

_Marcia Morales Howard_
**MARCIA MORALES HOWARD**
United States District Judge

lc12
Copies to:
Counsel of Record